59 P.3d 1249 (2002)
Randy RICHMOND, Appellant,
v.
The STATE of Nevada, Respondent.
No. 37933.
Supreme Court of Nevada.
December 27, 2002.
*1250 Michael R. Specchio, Public Defender, John Reese Petty, Chief Deputy Public Defender, and Cheryl D. Bond, Deputy Public Defender, Washoe County, for Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Richard A. Gammick, District Attorney, and Joseph R. Plater III, Deputy District Attorney, Washoe County, for Respondent.
Before the Court En Banc.

OPINION
ROSE, J.
In Braunstein v. State,[1] this court modified the rules of evidence concerning the admissibility of prior bad act evidence in prosecutions of sex crimes. The primary issue in this appeal concerns whether this rule should apply to criminal convictions arising from trials held prior to our decision in Braunstein, and not yet resolved on direct appeal.
We hold that Braunstein is to be applied to all criminal cases arising from trials held prior to that decision and not yet resolved on direct appeal, provided the issue has been preserved for appeal. Following a Braunstein analysis, we reverse Richmond's conviction and remand for a new trial.

FACTS

Procedural history
The action below arises from the prosecution of Randy Richmond for sexual misconduct with a minor referred to in this opinion as A.B. The State charged Richmond with four counts of lewdness with a child under the age of fourteen and one count of open or gross lewdness, all five counts involving A.B. The State sought to jointly try Richmond on an additional count of lewdness involving another child, A.R. The district court conducted a Petrocelli[2] hearing and concluded that A.B.'s allegations were not proved by clear and convincing evidence, and thus were not admissible with regard to A.R.'s allegations. Accordingly, the district court ordered separate trials, with A.B.'s allegations to be tried first. The district court, however, ruled that A.R.'s testimony would be admissible in a trial of A.B.'s allegations, finding that clear and convincing evidence supported A.R.'s allegations. Thus, at least in the view of the trial judge, evidence in the stronger case became admissible in the weaker case.
The jury convicted Richmond of three counts of lewdness with a child under fourteen, *1251 and acquitted him on the other counts. The district court sentenced Richmond to three consecutive terms of life imprisonment with the possibility of parole after ten years. Richmond appeals.

Factual background regarding A.B.
Starting in 1996, Richmond lived occasionally with A.B., her mother, grandmother, and one other adult female. After moving to the Ponderosa Motel in Reno, Nevada, A.B. visited Richmond in his apartment, always staying in the bedroom to watch television. At some point, Richmond began touching A.B. in private areas on her body. A.B. testified that Richmond made her touch his genitals and unsuccessfully attempted to persuade A.B.'s cousin to do the same. In addition, A.B. testified to "fuzzy kisses" that Richmond would give her, by putting his mouth on her belly and blowing on it. On another occasion, according to A.B.'s testimony, Richmond touched her genitals through her clothes while she pleaded with him to stop. Lastly, A.B. testified to an instance where A.B.'s dog, Keno, bit Richmond's crotch, after which he exposed himself and engaged in sexually suggestive behavior.

A.R.'s testimony at A.B.'s trial
As noted, the other alleged child victim, A.R., testified at A.B.'s trial on behalf of the State.[3] Richmond lived in A.R.'s apartment complex during the summer of 1999, when she was ten or eleven years of age. A.R., who lived with her mother and sister, visited Richmond several times alone at his apartment. This would usually occur after school between 2:30 p.m. and 4:30 p.m., until her mother would return home from work. A.R. also spent the night several times at Richmond's apartment. While at Richmond's apartment, A.R. would help around the house and also watch television.
A.R. testified at trial to one occasion where Richmond indicated his desire to take her to Disneyland and get a room with only one bed and "break [her] into being a woman." In addition, A.R. testified to several instances of sexual molestation by, or intercourse with, Richmond.

Other evidence introduced at A.B.'s trial concerning A.R.
Detective Adam Wygnanski testified on behalf of the State concerning his contact with Richmond following the report by A.R. Wygnanski testified that as soon as he identified himself to Richmond, Richmond calmly responded: "I know what this is all about. I am not a child molester." According to Wygnanski, Richmond admitted to feeling "really sick that he was even thinking about the thought," referring to his emotional reaction to his conduct with regard to A.R.
Detective Rebecca Clark interviewed Richmond on videotape, after a valid waiver of his rights under Miranda v. Arizona.[4] Detective Clark testified to Richmond's statements that he answered A.R.'s questions about sex, drew sexually explicit pictures of canine and human female genitalia, and taught her how to masturbate.[5] The detective also testified that during the interview, Richmond voluntarily drew a picture of the female genitals resembling the one he had drawn for A.R. The district court admitted this drawing into evidence and allowed the jury to view the videotape.
As noted above, Richmond was convicted at trial of A.B.'s allegations.

DISCUSSION

Braunstein
The majority of the issues presented in this appeal hinge on our recent decision in Braunstein v. State, addressing the admissibility of prior bad act evidence in prosecutions involving sexual misconduct. Prior to Braunstein, we followed a rule developed in *1252 McMichael v. State,[6]Findley v. State,[7] and their progeny.[8]McMichael held that evidence showing a defendant possesses a propensity for sexual aberration is relevant to the defendant's intent in a sex-crime prosecution.[9]Findley extended this principle to the effect that the probative value of such evidence outweighs the risk of prejudice as a matter of law.[10]
The rule in McMichael and Findley remained in effect at the time of Richmond's trial. However, subsequent to Richmond's trial, we overruled these cases in Braunstein, stating:
[W]e specifically ... repudiate the legal proposition stated in McMichael v. State that evidence showing an accused possesses a propensity for sexual aberration is relevant to the accused's intent.[11]
In doing so, we held that the district court must analyze the proposed evidence under NRS 48.045(2).[12]

Retroactivity
Richmond's briefs, filed prior to Braunstein, urged us to overrule the McMichael, line of cases. We now consider whether Braunstein applies to Richmond's appeal.
In determining whether a new rule of criminal law applies retroactively, we have inquired whether the new rule derives from the United States Constitution or from state law. A new federal constitutional rule must be applied retroactively to all cases which are not final, i.e., which have not finished the process of direct appeals and certiorari to the United States Supreme Court.[13] In contrast, "[w]hen questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions."[14]
The new rule in Braunstein simply interprets NRS 48.045(2), an evidence statute concerning the admissibility of prior bad acts. This is clearly an issue of state law, and does not derive from the United States Constitution. We have generally refused to apply new rules of state law retroactively.[15]
We now adopt the United States Supreme Court's retroactivity rule enunciated in Griffith v. Kentucky[16] for new rules of state law; therefore, we will apply a new rule to all cases on direct appeal regardless of whether the new rule is based on the federal constitution or state law. This promotes consistency and fairness because a new rule is applied to all cases not finalized on direct appeal. However, we further hold that retroactivity of a new rule of state law is only applicable when the issue has been preserved for appeal.[17] Accordingly, we must now determine whether Richmond has preserved the prior bad act issue for appeal.

Appellate review
The district court admitted A.R.'s allegations to prove a propensity for sexual *1253 aberration. Richmond made a motion in limine to exclude A.R.'s testimony, but failed to renew the objection at trial.
In 1983, in the case of Daly v. State,[18] we adopted the rule that a motion in limine, without a contemporaneous objection during trial, is insufficient to preserve an issue for appeal. In that case, Daly filed a pretrial motion to exclude evidence of other uncharged acts of misconduct, which the district court granted.[19] At trial, however, witnesses referred to several uncharged acts in their testimony, and defense counsel did not object to the evidence or remind the district court of its prior ruling, nor did Daly raise the issue in his post-trial motion.[20] In concluding that Daly waived the issue for appeal, we stated:
At least in situations where the district court has granted a party's motion in limine to exclude evidence, the error, if any, does not occur until the matter arises during trial and the court permits introduction of the contested evidence. The making of the motion in limine, without further objection, is not enough in such circumstances to preserve the issue on appeal.[21]
Over a decade later, we again addressed the waiver issue in Staude v. State.[22] In his first trial, Staude filed a pretrial motion to exclude evidence of his prior conviction for voluntary manslaughter, and the district court denied the motion.[23] Staude's first trial ended in a mistrial. In his second trial, Staude failed to renew his motion to exclude this evidence.[24] Following our conclusion that Staude failed to preserve the issue for appeal, we stated: "A ruling on a motion in limine is advisory, not conclusive; after denial of a pretrial motion to exclude evidence, a party must object at the time the evidence is sought to be introduced in order to preserve the objection for appellate review."[25]
Thereafter, we decided Rice v. State.[26] There, Rice filed a motion in limine to exclude evidence concerning the victim's cause of death and injuries that became evident to medical personnel following the victim's admission to the hospital.[27] The district court decided to limit the testimony regarding the extent of the victim's injuries.[28] But the court decided to admit evidence of the cause of the victim's death after hearing the State's expert testify outside the presence of the jury.[29] Thereafter, the State made comments during opening statement regarding the victim's injuries discovered by medical personnel following the victim's admission to the hospital.[30] Because Rice failed to object to these statements, we concluded that the issue was waived on appeal.[31]
Because Richmond failed to renew his objection regarding the admission of the prior bad acts during trial, the State contends that Richmond has waived this issue for appeal. Richmond, however, urges this court to overrule our cases that hold that a motion in limine does not preserve an issue for appeal. For support, Richmond presents three policy arguments against the rule: (1) that it wastes the court's time for an attorney to renew all objections from motions in limine, (2) that motions in limine serve no purpose if they cannot preserve issues for appeal, and (3) that forcing a defense attorney to renew objections during trial prejudices the jury because it might appear that the defense attorney is attempting to obstruct the presentation of evidence. In light of Richmond's policy arguments, we now take this opportunity to reconsider this issue.
*1254 The federal circuit courts that have considered this issue are divided.[32] The Fifth Circuit requires a contemporaneous objection to the admissibility of the evidence during trial to preserve the issue for appeal, "unless a good reason exists not to do so."[33] The Fifth Circuit's view is predicated on the theory that a motion in limine is essentially a hypothetical situation and that a trial court is in a better position to rule on an evidentiary issue in light of a specific trial situation.[34] The Eighth Circuit is in accord with the Fifth Circuit's view, but has recognized an exception to the general rule if a trial court makes a definitive ruling on a pretrial motion.[35]
On the other hand, the Ninth Circuit, which adopted the Third Circuit's approach, has held:
[W]here the substance of the objection has been thoroughly explored during the hearing on the motion in limine, and the trial court's ruling permitting introduction of evidence was explicit and definitive, no further action is required to preserve for appeal the issue of admissibility of that evidence.[36]
The Ninth Circuit noted that the purpose of a pretrial motion is to avoid cluttering up the trial and to reduce the need for sidebar conferences and arguments outside the presence of the jury.[37] Today, we adopt the Ninth Circuit's more flexible approach.
We, therefore, hold that where an objection has been fully briefed, the district court has thoroughly explored the objection during a hearing on a pretrial motion, and the district court has made a definitive ruling, then a motion in limine is sufficient to preserve an issue for appeal. To the extent that Daly, Staude, and Rice, are inconsistent with our holding today, they are modified.
In applying this approach, we conclude that Richmond preserved the prior bad act issue for appeal. The district court held a Petrocelli hearing and ruled the evidence admissible. There was no hint that the district court might reconsider the issue and change its ruling. Accordingly, we permit Richmond to raise on appeal his objection to the introduction of the prior sexual bad acts.

Evidence of prior sexual bad acts
The general rule under Nevada's rules of criminal evidence is that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."[38] However, such evidence may be admissible for a purpose not related to the character of the defendant, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[39] Notably, we have held that it is "heavily disfavored" to use prior bad act evidence to convict a defendant "because bad acts are often irrelevant and prejudicial and force the accused to defend against vague and unsubstantiated charges."[40] Our concern has been that this evidence will unduly *1255 influence the jury to convict the defendant because, based on that evidence, the jury believes the defendant is a bad person.[41]
We conclude that, under a Braunstein analysis, the district court erroneously admitted A.R.'s testimony. First, the motive exception is inapplicable under these facts. The motive exception generally applies to establish the identity of the criminal, or to prove malice or specific intent.[42] The motive exception may also be applicable where the charged crime was motivated by a desire to hide the prior bad act.[43] Richmond had already begun molesting A.B. before he met A.R., and molesting A.B. could not possibly disguise his crimes against A.R.
Regarding the motive exception, the dissent states that motive for a sex crime is an attraction to or obsession with the victim. In essence, the dissent contends that it is proper to admit prior bad act evidence to show a sexual propensity, which we held in Braunstein is inadmissible character evidence. Notably, McCormick on Evidence explains how the motive exception in cases involving sex crimesto show a propensity for sexual aberrationis not applicable, as compared to its use in other crimes:
Unlike the other purposes for other-crimes evidence, the sex-crime exception flaunts the general prohibition of evidence whose only purpose is to invite the inference that a defendant who committed a previous crime is disposed toward committing crimes, and therefore is more likely to have committed the one at bar. Although one can argue for such an exception in sex offenses in which there is some question as to whether the alleged victim consented (or whether the accused might have thought there was consent), a more sweeping exception is particularly difficult to justify. It rests either on an unsubstantiated empirical claim that one rather broad category of criminals are more likely to be repeat offenders than all others or on a policy of giving the prosecution some extra ammunition in its battle against alleged sex criminals.[44]
As the dissent acknowledges, the State has other methods at its disposal to demonstrate why someone would sexually assault a child, i.e., expert witnesses.
Next, the common plan exception is inapplicable here, as this exception requires that "each crime should be an integral part of an overarching plan explicitly conceived and executed by the defendant."[45] Indeed, this court has stated, "`The test is not whether the other offense has certain elements in common with the crime charged, but whether it tends to establish a preconceived plan which resulted in the commission of that crime.'"[46] We have held that a sexual assault at the same location and perpetrated in the same manner a month before the sexual assault at issue was inadmissible because it did not establish a common plan.[47] Here, Richmond appeared simply to drift from one location to another, taking advantage of whichever potential victims came his way. His crimes were not part of a single overarching plan, but independent crimes, which Richmond did not plan until each victim was within reach.
Finally, the evidence regarding A.R. was not relevant under any of the other exceptions to NRS 48.045. Therefore, we conclude that the district court abused its discretion in admitting A.R.'s testimony.
Failure to exclude evidence in a Petrocelli hearing is harmless error where overwhelming evidence supports the conviction.[48] Here, the only evidence that Richmond *1256 had molested A.B. was A.B.'s testimony. In fact, it appears from the record that this was more a trial of A.R.'s allegations than A.B.'s allegations. Thus, we conclude that the evidence concerning A.B. was not overwhelming, and that the extensive and highly prejudicial evidence concerning A.R. was not harmless beyond a reasonable doubt.

Jury instruction on propensity for sexual aberration
Over Richmond's objection, the district court instructed the jury that it could consider evidence of Richmond's prior bad acts to find that he possessed a specific propensity for sexual aberration.[49] This instruction derives directly from an instruction we upheld in Bolin v. State.[50] Our decision in Bolin relied entirely upon McMichael and Findley, the cases we overruled in Braunstein. Because we held in Braunstein that "evidence of other acts offered to prove a specific emotional propensity for sexual aberration" is inadmissible,[51] we direct the district courts to cease instructing juries that such evidence is admissible.
Testimony implying that Richmond had been previously jailed
A.B. twice testified, once during direct examination and once on cross-examination, that Richmond had been in jail prior to living with her family in 1999. Richmond did not object or move to strike that testimony, and thus a plain error analysis applies.[52] It is error for a witness to testify in such a manner that the jury could infer that the defendant had engaged in prior criminal activity.[53]
"To be plain, an error must be so unmistakable that it is apparent from a casual inspection of the record."[54] Here, the remarks were brief, and Richmond concedes that the attorneys did not purposefully solicit them. A.B. did not state why Richmond was in jail. Further, between A.B.'s testimony that Richmond lived with her for three to four months prior to November 1999, and A.R.'s testimony that she visited Richmond in his apartment in the summer of 1999, the jury could infer that any time Richmond spent in jail was brief. The district court did not commit plain error in failing to sua sponte strike this testimony.

CONCLUSION
The new evidentiary rule, which we announced in Braunstein, applies to all cases not finalized on direct appeal and where the issue has been preserved for appeal.
Because we conclude that the district court erred at trial, we reverse Richmond's conviction and remand the case for a new trial.
LEAVITT and BECKER, JJ., concur.
MAUPIN, J., concurring and dissenting.
I agree with Justice Rose that Richmond's convictions should be reversed and remanded for a new trial. More particularly, I agree that a fully briefed and argued motion in limine that leads to a definitive pretrial ruling is sufficient to preserve issues litigated in the motion for appellate review. I also agree that we must apply the decision in Braunstein v. State[1] to the present appeal. I write separately to note my individual views on the *1257 admissibility of the "other bad act" evidence in this case and in these contexts generally. I will also briefly address the dissent's position on the application of Braunstein to this matter.
Admissibility of "other bad act" evidence under NRS 48.045(2)
As noted by Justice Rose, the issues litigated in this appeal hinge on our recent decision in Braunstein, and its invalidation of our rulings in McMichael v. State,[2]Findley v. State,[3] and their progeny.[4] Under McMichael and Findley, evidence showing that a defendant possessed a propensity towards sexual aberration was relevant to the defendant's intent in a sex-crime prosecution[5] and, as a matter of law, the probative value of such evidence outweighed the risk of prejudice.[6] This rule remained in effect at the time of Richmond's trial and has been relied upon many times, as recently as our 1998 decision in Bolin v. State.[7]
The majority opinion in Braunstein states:
[W]e specifically ... repudiate the legal proposition stated in McMichael v. State that evidence showing an accused possesses a propensity for sexual aberration is relevant to the accused's intent.[8]
Although this language seemingly implies that other bad act evidence is never relevant to show propensity towards sexual aberration, the Braunstein opinion goes on to stipulate that such evidence is admissible if NRS 48.045(2)[9] is fully satisfied. The separate opinions of Justices Rose and Shearing in this matter remove any ambiguity as to whether the repudiation of McMichael and Findley renders such evidence irrelevant and thus inadmissible, as the passage quoted above might seem to suggest. To the contrary, our pronouncements today, when read together with the entirety of the Braunstein opinion, confirm that such evidence remains admissible if the proponent of the evidence can show, as explained in Tinch v. State,[10] that (1) the other bad acts are relevant to the crime charged, (2) the State can prove the prior bad acts by clear and convincing evidence, and (3) the probative value of the evidence is not substantially outweighed by its prejudicial impact.[11]
In applying Braunstein to the facts of the case, Justice Rose concludes that A.R.'s evidence could not have been admitted in Richmond's prosecution for acts perpetrated against A.B. to show motive or that the sexual assaults of A.B. were committed as part of a common scheme or plan. I disagree with Justice Rose's view of the scope of the "motive exception" under NRS 48.045(2).[12]
The dissent cogently argues that A.R.'s testimony was relevant to demonstrate motive, to wit: an attraction or obsession with a victim. Thus, the dissent reasons, attraction or obsession with a child victim shows why *1258 the crime was committed. I agree. To me, whatever might "motivate" one to commit a criminal act is legally admissible to prove "motive" under NRS 48.045(2).
As one of the dissenters to the repudiation of McMichael and Findley, I also have to agree that other acts of sexual aberration do show why a person would commit an act of sexual violence upon a minor child. In this, such evidence is also admissible to show intent. To me, why a person commits a crime from his or her mental viewpoint is inextricably intertwined with that person's intent.
Beyond proof of motive and intent, a predilection towards this type of aberrant behavior should remain relevant in these cases as a general matter because NRS 48.045(2) is not restricted to the examples set forth as exceptions to non-admissibility of other acts or wrongs to prove character. Such evidence is admissible under NRS 48.045(2) for "other purposes, such as proof of motive...." (Emphasis added.) If such evidence is admissible to explain why an offense was committed, and if the evidence does not fit neatly within one of the enumerated examples, the evidence is still admissible for "other purposes." This of course is the essence of McMichael and Findley, and why I dissented from the repudiation in Braunstein of these cases.

Third prong of Tinch
The dissent does not address whether the probative value of the motive evidence substantially outweighed the prejudicial effect of its admission. I attribute this to the fact that my dissenting colleagues oppose retroactive application of Braunstein in this case. If this is so, it would appear that they wish to apply McMichael and Findley to affirm the judgment below. Because I believe that we must now apply Braunstein to this controversy, and because I believe application of the third prong of Tinch requires reversal, I will address this issue immediately below.[13]
As summarized by Justice Rose, the trial judge found that the claims of A.B. were not cross-admissible in the trial of the A.R. accusations because the claims of A.B. were not proved or established by clear and convincing evidence under Tinch. Notwithstanding my view that A.R.'s claims were relevant as evidence of motive and intent in the A.B. trial, I conclude that admission of the evidence of Richmond's misconduct with child victim A.R. in the much weaker case involving the claims of A.B. was an abuse of discretion under the majority's repudiation of McMichael and Findley in Braunstein. Clearly, the probative value of A.R.'s allegations bolstered the much weaker A.B. case, that the trial court felt could not pass muster under an even lesser burden of proof than would be required to convict Richmond at trial. Thus, the prejudicial effect of the A.R. evidence substantially outweighed its probative value.

Automatic exclusion/inclusion under NRS 48.045(2) and the upshot of Braunstein
The dissent argues that Justice Rose has misapplied Braunstein by implicitly creating a rule of automatic exclusion of other acts of misconduct in these circumstances. In this, the dissenting opinion also observes that the purpose of Braunstein was to overturn a rule of automatic admissibility of evidence of sexual aberration, not to create a new rule of automatic exclusion. Neither proposition is true.
First, McMichael and Findley required that such evidence be relevant to charges of sexual assault, and that the "other" evidence be proved by clear and convincing evidence. This second leg of the rule of admissibility under Tinch was applied by the district court with regard to the admissibility of A.B.'s evidence in the prosecution of the A.R. allegations. The third leg of admissibility, that the probative value of the evidence must not substantially outweigh its prejudicial effect, was per se satisfied under McMichael and Findley because other sexually aberrant acts, if proved by clear and convincing evidence, strongly suggest the mental state required to commit acts such as pedophilia or forcible rape. Clearly, the McMichael line of cases did not create a rule of automatic admissibility.
*1259 Second, if we assume that all three prongs of Tinch must be proved to establish admissibility under NRS 48.045(2), particularly the elimination of Findley's rule that the probative value of sexual aberration evidence is never outweighed by its prejudicial effect, an automatic rule of exclusion has not been created under Justice Rose's Braunstein analysis. Certainly, no rule of automatic non-admissibility exists under my analysis.
Under the dissent's application of the motive exception to the type of facts submitted to in this particular case, it is arguable that there are no cases where this evidence of motive will be inadmissible under Braunstein's repudiation of Findley. If this is so, given that four members of this court seem to agree on the scope of permissible motive evidence under NRS 48.045(2), the analytical exercise mandated under Braunstein has accomplished little of significance in the way of change in evidentiary doctrine, at least as a practical matter. Thus, I have revisited the repudiation of McMichael and Findley in order to urge that the dilemma this case has created with regard to our retroactivity rules could be avoided by simply reviving the rules set forth in these cases.[14] Having said this, I recognize that such is unlikely and therefore will simply apply what I believe to be the new rule in this and in future cases.[15]

Retroactive application of Braunstein
The majority in Braunstein overturned the McMichael line of cases in dealing with Braunstein's claim that other bad act evidence was improperly admitted within the parameters of the prior cases. He did not, in making his argument, seek our rejection of the prior cases as valid authority. Richmond, on the other hand, urged in this appeal that we overturn these precedents in briefs filed before our decision in Braunstein. Although we did not rule in Braunstein's favor, we applied the new rule of admissibility to him. Having sought repudiation of these prior cases, Richmond should likewise have the benefit of that analysis.
I note again that, as a practical matter, little has changed with regard to admissibility of this type of evidence under the dissent's approach to admission of evidence under NRS 48.045(2). The trauma to the system the dissent claims will eventuate as a result of the retroactive application of Braunstein in this case could have been avoided by leaving the McMichael line of cases intact. This is simply the net effect of changes in the law to pending cases.
My dissenting colleagues observe:
The cases on direct appeal should be analyzed under the case law applicable at the time of the trial. However, this court could also review the cases on appeal by analyzing the particular evidence to determine whether it would have been admissible under our rules of evidence, as this court did in Braunstein.[16]
The two quoted sentences are seemingly at odds. We must apply either the old or the new rule. In this connection, I would reiterate that my dissenting colleagues' primary view on retroactivity would ironically require our application of McMichael and Findley to the instant controversy.
SHEARING, J., with whom YOUNG, C.J., and AGOSTI, J., agree, concurring in part and dissenting in part.
I agree with the holding that a motion in limine is sufficient to preserve an issue for appeal. I do not agree that the retroactivity standard used, for changes in constitutional and substantive law rules, is appropriate for a change in a rule regarding admissibility of evidence. I most definitely do not agree *1260 with the plurality in its interpretation of Braunstein v. State.[1]
The court adopts the retroactivity standard used by the United States Supreme Court for constitutional issues[2] and automatically reverses the conviction in this case. The automatic reversal is inappropriate. In Franklin v. State,[3] even when considering errors of constitutional magnitude on direct review, this court applied a harmless error analysis and upheld the convictions. In Franklin, this court stated:
In cases determining complete retroactivity or prospectivity of new constitutional rules, the Supreme Court has consistently considered three factors: (1) the purpose of the rule; (2) the reliance on prior, contrary law; and (3) the effect retroactive application would have on the administration of justice. See Tehan v. United States, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). We have adopted the same analysis to determine the retroactivity of new Supreme Court rulings in which retroactive effect has been left undecided. See Hatley v. State, 97 Nev. 360, 630 P.2d 1225 (1981).[4]
As Justice Rose points out, the United States Supreme Court has held that, "[w]hen questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions."[5]
The three factors, which this court has held should determine retroactivity, all favor applying the new rule only to trials taking place after the new rule is announced. The purpose of the new rule in Braunstein is simply to apply the existing rules of evidence for determining the admissibility of evidence. Prosecutors conducted trials in reliance on the rule in prior case law. The psychological burden on crime victims, and the financial burden on the system of retrying cases tried under existing case law, militates toward not applying the new rule retroactively. The cases on direct appeal should be analyzed under the case law applicable at the time of the trial. However, this court could also review the cases on appeal by analyzing the particular evidence to determine whether it would have been admissible under our rules of evidence, as this court did in Braunstein. This promotes consistency and fairness, without imposing the burdens of new trials on the judicial system.
The plurality misinterprets Braunstein. As a signatory to Braunstein, I did not and would never have agreed to a rule of evidence that states that evidence of prior bad acts offered to prove a specific emotional propensity for sexual aberration is always inadmissible. In Braunstein, I held that the admissibility of evidence of sexual aberration must be determined under the rules of evidence as stated in NRS Chapters 47 through 56, and particularly NRS Chapter 48, and not by a blanket rule of admissibility in case law. Case law following McMichael v. State[6] put sexual aberration in a special category as admissible automatically in cases of sexual crimes against children. In Braunstein, this court repudiated the legal proposition that in sex crimes, propensity for sexual aberration is automatically admissible without further analysis.[7] I signed Braunstein because I believe that it is wrong for this court to create a rule making a particular type of evidence automatically admissible without regard for the rules of evidence and the facts of the individual case. It is equally wrong to create a rule making that particular type of evidence automatically inadmissible. The admissibility of all evidence must be determined under the appropriate rules of evidence in our statutes, and that is what we held in Braunstein.
*1261 The plurality also states that evidence of sexual aberration is not relevant to prove motive. I disagree. The plurality states that the motive exception applies "to establish the identity of the criminal, or to prove malice or specific intent. The motive exception may also be applicable where the charged crime was motivated by a desire to hide the prior bad act."[8] That is a very limited and inaccurate view of motive evidence.
The motive for a crime can be, and often is, the oppositenamely, an attraction to or obsession with a victim, as in stalking. Even though motive is not an element of a crime and need not be proven, it has virtually always been an integral element of proof in a criminal trial. Often the motive is straightforward, as in robbery, where the desire or need for money is readily understood by the jury. On the other hand, in a murder case, in order for a jury to understand why a person would kill another person, it is very important to show the motive for the killing.
Similarly, in cases involving sexual crimes against young children, it is important to show a motive. The vast majority of the population cannot understand a sexual attraction to children and finds it difficult to believe that an adult would sexually molest them. Therefore, it is highly relevant and appropriate to establish that the defendant has a sexual attraction to children. Often, this is shown by evidence of prior sexual relations with children, as is done in both the instant case and in Braunstein. Sometimes it is shown by an expert witness. The rule proposed by the majority would apply a blanket bar to any evidence of propensity for sexual aberration, even expert witness testimony. That is not only wrong, but unprecedented, and not conducive to achieving fair and just outcomes in child sexual abuse cases.
The plurality miscites McCormick on Evidence for the proposition that evidence of other sex crimes is not admissible to prove a sexual aberration. On the contrary, McCormick recognizes that sexual aberration is one of the accepted exceptions to prior bad act evidence and is routinely admitted under provisions similar to NRS 48.045. Actually, McCormick states:
As the rule indicates, there are numerous uses to which evidence of criminal acts may be put, and those enumerated are neither mutually exclusive nor collectively exhaustive. Subject to such caveats, examination is in order of the principal purposes for which the prosecution may introduce evidence of a defendant's bad character. Following this listing, some general observations will be offered about the use of other crimes evidence for these purposes. The permissible purposes include the following:
....
(9) To show a passion or propensity for unusual and abnormal sexual relations. Initially, proof of other sex crimes was confined to offenses involving the same parties, but many jurisdictions now admit proof of other sex offenses with other persons, at least as to offenses involving sexual aberrations. Federal Rules of Evidence 413 and 414, added by Congress in 1994, allow the broadest conceivable use of "similar crimes" in sexual assault and child molestation cases, making "evidence of defendant's commission" of other such offenses "admissible ... for its bearing on any matter to which it is relevant."[9]
The evidence of Richmond's prior similar sexual molestation of a child was properly admitted under our rules of evidence to show motive. I would affirm the judgment of conviction of Randy Richmond for three counts of lewdness with a child under the age of fourteen.
YOUNG, C.J. and AGOSTI, J., concur.